UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER MANNING,

    Plaintiff,

v.                                                    Case No: 8:13-cv-3060-T-36MAP

ST. PETERSBURG KENNEL CLUB, INC.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court upon the Amended Motion for Final Summary Judgment, filed by Defendant St. Petersburg Kennel Club, Inc. d/b/a Derby Lane ("Derby Lane") (Doc. 48). Plaintiff Jennifer Manning responded in opposition to the Motion (Doc. 54). Derby Lane replied in further support of its Motion (Doc. 58). Derby Lane also filed a Notice of Supplemental Authority (Doc. 61). The Court, having considered the parties' submissions and being fully advised in the premises, will now GRANT Derby Lane's Motion for Summary Judgment.

**I.    STATEMENT OF FACTS[1]**

This dispute arises over the applicability of the minimum wage requirements of the Fair Labor and Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Derby Lane operates a commercial poker room at its facilities in St. Petersburg, Florida. Doc. 48-1 ("Streur Decl.") ¶ 4. Derby Lane considers its poker dealers, cashiers, and brushes all to be tipped employees under the FLSA, and

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, affidavits, and deposition testimony.

accordingly, claims a tip credit for those employees, *id.* ¶ 7, thereby permitting it to pay them less than the federally-mandated minimum hourly wage.

Derby Lane maintains a tip pool for tips to be distributed to cashiers and brushes, to which dealers are required to contribute 10% of their tips. *Id.*; *see also* Ex. A to Streur Decl. Derby Lane also provides tip boxes for brushes and cashiers to receive and place tips from customers. Streur Decl. ¶ 11. These tip boxes appear at each of the three cashier stations, and are labeled "CASHIER AND BRUSH TIPS." *Id.*; Ex. D to Streur Decl.

From December 2011 to March 2013, Derby Lanes employed Manning as a poker dealer. Streur Decl. ¶ 6. As it did with the other poker dealers it employed, Derby Lanes claimed a tip credit for Manning, and accordingly paid her less than the federally-mandated minimum hourly wage. Doc. 55-5 ("Manning Aff.") ¶¶ 2-3. Manning was also required to, and did, contribute 10% of her tips to the tip pool. *Id.* ¶ 4; Ex. A to Streur Decl.

In bringing this suit, Manning asserts that Derby Lane's tip pool was invalid because it included cashiers, who are not eligible under the FLSA to participate in the tip pool. According to Manning, because the tip pool was invalid, she is entitled to receive the mandatory minimum hourly wage. Derby Lane now moves for summary judgment, arguing that there is no genuine dispute that its cashiers are "tipped employees" under the FLSA, thus rendering its tip pool valid as a matter of law.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the

initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. App'x 852, 858 (11th Cir. 2006).

**III.  DISCUSSION**

The FLSA requires an employer to pay a minimum hourly wage to employees engaged in commerce. *See* 29 U.S.C. § 206(a). However, an employer may pay less than the minimum hourly wage to a "tipped employee" if it can claim a "tip credit." *See* 29 U.S.C. § 203(m). To do so, the employer must inform the employee of the FLSA's tip provisions. *See id.* The employer must also permit the employee to retain "all tips," with the exception that tip pooling is permitted "among employees who customarily and regularly receive tips." *Id.* The FLSA separately defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

A.      **Derby Lane's Allegedly Invalid Tip Pool**

Manning argues that because Derby Lane included its cashiers in its tip pool, the tip pool was invalid. The Court disagrees. Critically, the undisputed evidence reveals that the cashiers employed at Derby Lane customarily and regularly receive more than $30 a month in tips directly from the customer, thus qualifying as "tipped employees" under the FLSA. Indeed, a Derby Lane employee states that she customarily and regularly receives more than $30 a month in "direct customer tips" while working as a cashier. *See* Doc. 58-1 ("Parker Decl. II") ¶ 3. She notes that "direct customer tips" refer to only those tips placed directly into her hand and those tips placed in the tip box that the customer indicates are intended for her. *See id.* She further adds that, based on her knowledge and observations of other cashiers at work, "every Derby Lane poker room cashier customarily and regularly receives more than $30 a month in direct 'personal' tips." *Id.* ¶ 4. Derby Lane's Director of Gaming confirms that Derby Lane's cashiers customarily and regularly receive more than $30 a month in tips from the customers exclusive of any amount they might receive through the tip pool. *See* Doc. 58-2 ¶¶ 4-5.

Manning does not challenge the veracity of these statements. Rather, she points to the fact that Derby Lane's tip boxes are labeled for both cashiers and brushes, and suggests that Derby Lane therefore cannot establish whether the tips in the tip boxes are meant for the cashiers or for the brushes. Contrary to her suggestion, however, Derby Lane's employee unequivocally states that she is able to distinguish which tips in the box are meant for her, and that those tips, in combination with the tips she receives in her hand, customarily and regularly exceed $30 a month. Indeed, there is no conflict between the fact that Derby Lane operates a commingled tip box for its cashiers and brushes and the fact that the direct personal tips received by cashiers, including

4

those tips from the tip box meant for the cashier, customarily and regularly total more than $30 a month.

Moreover, Manning's deposition testimony is consistent with Derby Lane's position that cashiers regularly and customarily receive tips directly from the customer. *See, e.g.*, Doc. 48-3 ("Manning Dep.") at 115-16 ("All cashiers get tipped if the [customer] feels generous."); 118 ("I have seen poker players tip a cashier."); 164 ("Q: [I]s there any poker-room facility that you've worked at where cashiers did not receive tips from customers? A: No."). And although Manning is not required to establish that Derby Lane's cashiers customarily and regularly receive *less* than $30 a month in direct personal tips, her complete silence in that regard confirms the undisputed nature of Derby Lane's assertion that the tip amounts received by its cashiers directly from customers customarily and regularly *do* exceed $30 a month.

Because it is undisputed that Derby Lane's cashiers customarily and regularly receive over $30 a month in direct customer tips, as a matter of law, they are "tipped employees" under the FLSA. Accordingly, their inclusion in Derby Lane's tip pool does not render the tip pool invalid. *See Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 301 (6th Cir. 1998) ("if a tip-pool participating employee fulfills the subsection 203(t) requirements, she necessarily fulfills the subsection 203(m) requirements as well").

Manning nevertheless argues that cashiers are not eligible to participate in the tip pool because they are, to paraphrase her words, merely human ATMs whose only purpose is to sit behind a locked cage and exchange chips for money. The Court agrees that in some circumstances, an inquiry into the quality and quantity of an employee's customer interaction is warranted to determine whether he or she can properly be included in a tip pool. *See Wajcman v. Inv. Corp. of Palm Beach*, Case No. 07-cv-80912, 2008 WL 783741, at *4 (S.D. Fla. Mar. 20, 2008). However,

5

because Derby Lane's cashiers are "tipped employees" under the FLSA, Manning's characterization of their job duties is irrelevant. *See Palacios v. Hartman and Tyner, Inc.*, Case No. 13-cv-61541, 2014 WL 7152745, at *6-7 (S.D. Fla. Dec. 15, 2014) ("The [FLSA] straightforwardly defines a tipped employee as one who is 'engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips.'  No requirement of customer service is involved. . . . [W]here the person is, as a matter of undisputed fact, tipped by patrons, . . . the employment position is indisputably one involving the customary and regular receipt of tips, simply by virtue of the fact that tipping routinely occurs."); *compare Wajcman*, 2008 WL 783741 (no evidence that casino floor supervisors received any direct tips from customers).

Finally, Manning cites a Department of Labor Report in which certain casino cashiers were found to be ineligible to participate in tip pooling.  *See* Doc. 55-1.  Although the Court declines to rule on the admissibility of the report at this time, it considered the report in ruling on Derby Lane's motion and has not changed its opinion.  As Derby Lane points out, aside from noting that the cashiers employed by that particular establishment "worked behind protective glass and had minimal contact with customers," the report provides no details regarding the job duties or level of customer service interaction of those cashiers.  *Id.* at 3.  The report also fails to explain how the determination that the cashiers were not "tipped employees" was reached.  Here, the relevant inquiry is whether *Derby Lane's* cashiers are eligible to participate in tip pooling, not whether all cashiers in general, or even those cashiers employed by casinos, are eligible to participate. Accordingly, the report has at most minimal relevance to this case and fails to create a genuine issue of material fact.[2]

---

[2] The Court notes that it similarly finds unpersuasive Derby Lane's argument that its cashiers are tipped employees because of Plaintiff's attorney's stance in other litigations, *see* Doc. 58 at 7-8.

Because there is no genuine dispute that Derby Lane's cashiers are "tipped employees" under the FLSA, their participation in Derby Lane's tip pool did not render the tip pool invalid. And because Manning has advanced no other grounds as to why the tip pool is invalid, Derby Lane is entitled to judgment as a matter of law as to Manning's tip pool claim.

B.     **Derby Lane's Allegedly Improper Deduction of Tips**

Manning advances a separate ground for denying summary judgment—that Derby Lane unlawfully deducted tips from the dealers when shortages occurred. *See* Doc. 54 at 14-16. Derby Lane objects primarily on the ground that this theory of liability was improperly raised. The Court agrees. To begin with, the Complaint did not adequately put Derby Lane on notice that Manning was attempting to state a claim relating to the improper deduction of tips. *See* Doc. 1 ¶ 11 ("Defendant . . . failed to comply with the 'tip-credit' requirements pursuant to the FLSA by, inter alia, including floor supervisors and cashiers as 'tipped' employees . . . ."). And although the Complaint does not explicitly *exclude* the withholding-of-tips theory, Manning's submissions throughout this litigation make clear that she did not contemplate that this theory was included in her claim. *See* Doc. 12 (in Manning's opposition to Derby Lane's Rule 12(b)(6) motion to dismiss, addressing only the tip pool issue and asserting that "it is clear the Defendant understands the claim and the theory asserted here under the FLSA"); Doc. 15-1 ¶ 6 (in Manning's answers to the Court's interrogatories, under the question "What is the nature of your claim?," stating that "Defendant did not pay federal minimum wages as Plaintiff was part of a *tip-pool* that did not comply with the FLSA") (emphasis added). Manning never sought to amend her Complaint to include this theory, and, as far as this Court is aware, raised it for the first time in her opposition to Derby Lane's motion for summary judgment.

7

Manning's attempt to amend her claim to include this theory via her opposition brief is improper. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (affirming the District Court's grant of summary judgment on plaintiff's theory that defendant breached a contract by failing to give a reasonable notice of termination because plaintiff did not plead such a claim and raised it for the first time at summary judgment); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment); *see also Scott v. Rite Aid of Georgia, Inc.*, 918 F. Supp. 2d 1292, 1306 (M.D. Ga. 2013) (dismissing plaintiff's retaliation claim because it was raised for the first time in her opposition brief). Accordingly, to the extent that Manning has amended her FLSA claim to include a claim for Derby Lane's deduction of tips, the Court will dismiss it.

## IV.  CONCLUSION

The evidence reveals that there is no genuine issue of material fact that Derby Lane's cashiers are "tipped employees" under the FLSA. Derby Lane's cashiers were therefore eligible to participate in its tip pool. Manning has failed to properly advance any other theory as to how Derby Lane's employment practices violated the FLSA. Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion for Summary Judgment (Doc. 48) is **GRANTED**.
2. The Clerk is directed to terminate all pending motions, enter judgment in favor of Defendant St. Petersburg Kennel Club, Inc. and against Plaintiff Jennifer Manning, and close this case.

**DONE AND ORDERED** in Tampa, Florida on February 5, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any